Good morning, Your Honors. May it please the Court. This case involves an error by the Patent Office by the Board who erred by not measuring the reasonable expectation of success against the claimed invention. First, with respect to Grounds 1, 2, and 5 of the petition, the petition clearly set forth how the primary reference void disclosed each and every limitation of the claim with the exception that void had a single camera and the claim called for plurality of cameras. But the petition then went on to detail separate independent teachings found in the prior art or otherwise known to persons of skill which motivated the addition of cameras to the void system at various locations relative to the image subject and the Board acknowledged these teachings. Then the petition explained how the elements of Claim 1 in its independent claims, claims which merely called for vertically spaced cameras and cameras that were laterally disclosed on opposite sides of a center line, how those limitations were met, at least in one instance, without requiring a rear camera. In other words, Canfield's petition argued that these claim limitations were mapped to cameras other than the cameras located behind the subject. But the Board nevertheless declared that including a rear camera capable of imaging the subject from the rear was necessary and was necessary to render the claims obvious. This is an error that the Court here reviews de novo. The Board also erred by requiring that Canfield's proposed configuration successfully image portions of the subject that were in contact with the void positioning sliders. The Board's determination that the sliders would obscure portions of the subject, however, is irrelevant here because nothing in the claim precludes the obstruction of portions of the image subject. Once again, the Board failed to measure the reasonable expectation of success against the claimed invention, which expressly recited that only a portion of the subject need be imaged. If looking at page 11 or page 6 of your reply brief, is what you're saying that having cameras 3, 4, 5, and 6 would satisfy the claim limitations and that cameras 1 and 2, that is the cameras supposedly obscured by the wall, are unnecessary to meet the claim limitation? That is correct, Your Honor. In connection with an interpretation of the claim where the center line is what is shown in that diagram on page 6 as the red dotted line. Well, the Board said that the center line was the red dotted line, right? That is correct, Your Honor. We did offer an argument that cameras 1 and 2 could be incorporated in the void if it was necessary for those cameras to be opposite a center line which was shown in green. But as you point out, Your Honor, the Board found that the center line in this instance was the red line. In that case, cameras 3, 5, and 6... I'm going to turn off the timer and try to reconnect Judge Reyna. Could I also ask the clerk where I am on the clock, please? Oh, well, we'll make sure that we get to hear your argument. Thank you, Your Honor. Can you hear me okay? Yes, I can. Okay. Judge Newman, whenever you're ready. Okay. Well, and how about Mr. Dustin's question of how much time does he have left in his argument in chief? Sure. He has reserved three minutes. There is 11 minutes and 30 seconds remaining in total, including his rebuttal. Oh, okay. We'll proceed. We want to be sure we hear your argument, Mr. Dustin. Thank you, Your Honor. So just to return to page 6 in the diagram there, if we imagine this camera configuration transplanted into the void reference, and we're talking about cameras 3, 5, 4, and 6, we would then have cameras that were both vertically spaced and cameras that were laterally disposed on opposite sides of the center line. And that is really all claim 1 requires, Your Honor. So it was error for the board to insist that Canfield was required to establish a reasonable expectation of success for cameras that were located behind the individual if the center line is indeed the red line that's drawn from front to back in the diagram. I wanted to turn for a moment to ground 4. And again, in this particular instance, this is the ground that involves the combination of Voight and Hurley and then the addition of Danan to that combination. The board in that instance improperly ignored arguments in the petition for why a person of ordinary skill in the yard would further multiply the number of cameras used. That motivation was clearly spelled out in the petition, Your Honors, that the number of cameras, an increase in the number of cameras leads to an increase in the resolution that the total system can obtain from the individual. Because each camera, if multiplied, more cameras can focus on smaller areas of the body and therefore lend the entirety of their CCD arrays to that smaller area of the body and therefore achieve more image capture, greater resolution. That was clearly spelled out in the petition. The board further held that, again, finding that a wall would have obscured any rear cameras, it indicated that Canfield had failed to establish a reasonable expectation of success. Again, in this particular instance, we acknowledge that in the mappings we made for ground 4, because the claims that are addressed in that ground, claims 6 and 7, involve a third and fourth array of cameras, that in the mappings that we made in the petition, we mapped those additional camera arrays to camera positions that would have led to the positioning of cameras behind the subject. Our argument here, Your Honors, is that the board's conclusion that there was a wall described in void, the primary reference, lacks substantial evidence on one basis. And the second argument we make here, Your Honors, is that the board indicated that there was evidence of record, declared by the board to be of record, evidence of record as to how simple it would be to remove any such wall, should it actually be disclosed, and to retain the sliders that void describes, or otherwise make modifications to retain those, and that those modifications would have been within the skill of the art. And the board credited that testimony on institution, indicated it was of record, declared that the trial would proceed on that basis. The patent owner, in its patent owner response, did not object to that evidence, in fact dealt with it substantively, nor did it file a motion to exclude that evidence, as it was required to do to preserve any objections to it. And it was only after the trial, in this matter, that the board abruptly and unilaterally changed its theory midstream, and announced that it was going to ignore that evidence, because it believed that evidence violated 37 CFR 42.6A3, that it represented an improper incorporation by reference from the expert declaration. And our argument here, Your Honors, is that abrupt midstream change, after the trial was conducted, was an arbitrary and capricious act, an arbitrary and capricious application of this rule by the board, and is a violation of the APA, and that the board should have considered that evidence, and therefore, for at least ground four, we're asking that, at minimum, that this court remand this matter for reconsideration by the board of that evidence in connection with ground four. On grounds one, two, and five, however, Your Honor, I think that there is sufficient evidence here that the board's conclusions about reasonable expectations of success are sufficient, that they are unsupported by the record. In fact, the record supports the opposite, and therefore, we think that it is appropriate to reverse the decisions with respect to those grounds. Okay. Any questions at this point for Mr. Dustin? Then let's hear from the other side. Your Honor, I'll reserve my remaining time for rebuttal then. Yes. Good. Mr. Garitano? Yes. Good morning, Your Honor. It's Mark Garitano with McCarter & English, representing the patent owner, Melanoscan, and the appellee. May it please the Court. Your Honor, the- If we look at page six of the reply brief, and we see the-this is Hurley-we see these cameras three, four, five, and six. If those were incorporated into void, that would satisfy the claim, right? Because the claim requires only imaging a portion of the body. We agree, Your Honor, that the claim does not require cameras behind the-the person or the person being imaged. And so incorporating three, four, five, and six into void would satisfy the claim limitation, right? If-Your Honor, if they were properly incorporated and a proper obviousness argument and evidence were put forward, that would be possible in the sense that the claim does not preclude having cameras that-having a camera arrangement that does not include cameras behind the-the person being imaged. That's correct. Okay. My problem with-my problem with the board decision is they focus entirely on this void that would obscure cameras one and two. And yet you've agreed, and I think that's right, that cameras one and two aren't required to satisfy the claim limitation. So whether there's a wall or there's not a wall in void is really irrelevant to the question of whether the incorporation of the other cameras, three, four, five, and six, from Hurley into void would satisfy the claim and-and render the claim obvious. Well, Your Honor, I would submit that the board did not focus exclusively on the rear wall. That was part of the issue. And I think, Your Honor, we have to take a step back, and we have to look at the petition, and we have to look at the grounds for unpatentability as they were fairly presented in the petition. And if we look, Your Honor, at page 1059 of the appendix, that sets forth the single theory of unpatentability with respect to ground one. And if we look at the second and third line on page 1059, the petitioner argued that a POSA would have been motivated to modify void to incorporate the multiple cameras of Hurley. Nowhere in the petition or in the supporting declaration did they set forth evidence or argument that the proposed combination was including less than all of the multiple cameras in Hurley. Okay. That may be, but if you incorporated all the cameras in Hurley, even if two of them were blocked, you'd still satisfy the claim. You may satisfy the claim, Your Honor, but I think the point was is that in order to prove obviousness, they have to first prove a motivation to combine, and then they have to prove a reasonable likelihood of success. I'm sorry, a reasonable expectation of achieving what's in the claim. Okay. So with respect to the first point, Your Honor, the board, again, took Canfield at its word as it was presented in the petition and squarely addressed the motivation to combine arguments. And so the motivations to combine, Your Honor, are set forth on page 1059. And they set forth several rationales on page 1059, immediately following the theory of obviousness. They then set forth various rationales for why a person of ordinary skill would have been motivated to make that combination. And the board fully considered the evidence with respect to all of those rationales. Well, I don't think they truly considered the one rationale, which was to do whole-body imaging, which, as you point out, wouldn't be satisfied if two cameras, one and two, were blocked. But they didn't address the other rationales, which don't require whole-body I submit, Your Honor, that they did consider that and there's substantial evidence to that effect. Dr. Vander Weide... Where did they consider those other rationales? I don't see it in the board opinion. Can you tell me where? Your Honor, yeah, if we go to the appendix, Your Honor, at page 31, the appendix at page 31, at the very last three lines of that page, the board states in pertinent part, first they do point out about Boyce's rear wall would have blocked the view of two rear-facing cameras. And then they go on to say, Boyce's horizontally adjustable sliders would have partially blocked the views of the remaining cameras. And that was a significant part of  The sliders would block the view of the rear cameras, not three, four, five, and six. Yes, well, it does partially, at least partially block the views of four, five, and six, Your Honor, because the sliders, if you recall, Boyce has a single camera... The sliders are behind the individual, right? No, they are not. The sliders are not behind the individual. The sliders, if we go to page... If we look at Boyce, Your Honor, which is... Sorry, next to the individual. Yeah, yeah, if we look at Boyce, Your Honor, at 573 in the appendix, and 574, we can see that the horizontally adjustable sliders, they project outwardly from the rear wall, or inwardly into the enclosure, such that they engage the lateral sides of the person being imaged. And if we look at... Okay, but even if they do block part of the person, the claims don't require scanning the entire person. It just requires scanning a portion of the person. Well, Your Honor, okay, so now we're talking about a reasonable expectation of success prong as opposed to the motivation to combine prong, okay? And I want to make something very clear on this. First of all, Canfield never argued reasonable expectation of success in its petition or in its supporting declaration. Nowhere does the petition mention the reasonable expectation of success, much less argue it or argue that there's evidence supporting a reasonable expectation of success. It's devoid of that. That's a new argument on appeal that was not presented below in the original petition. What Canfield argued... What the board said here, and we have to review what the board said, not what it might have said. And what the board said is there's no motivation here because the rear cameras would be blocked. But the rear cameras are not required to satisfy the claim limitation. That's the basic problem you have. So, Your Honor, the motivation to combine, first of all, that inquiry does not need to be commensurate in scope with the claimed invention. I understand that the reasonable expectation of success does, but not the motivation to combine. The motivation to combine is based on the rationale that are presented by the petitioner in the petition. And the board went through and examined those, and the board found at the bottom of page 31, and by the way, this court reviews judgments, not decisions, and we submit, Your Honor, that there is substantial evidence in the record to support the board's finding, number one, with respect to no motivation to combine, which was the only argument presented and argued by Canfield below. And there, the board, the inquiry is not limited to only what's recited in the claimed invention. The inquiry is a fair analysis of the rationales that were presented by Canfield, which were and credited the testimony of Melanith Gann's expert, Dr. Vandermeer. I don't see where the board addressed these other motivations to combine, which don't involve whole-body imaging. That is, the increased resolution, the avoidance of shadows, they don't address those motivations in the decision. Well, Your Honor, they do reference two things. Very quickly, what I can find again is at the bottom. Where did they address those other motivations? Okay, at the bottom of page 16, they say that voice horizontally adjustable sliders would have partially blocked the views of the remaining cameras, and then they refer there to paragraph 55 through 58 of the Vandermeer Declaration. And if we go to the Vandermeer Declaration, they also, by the way, Your Honor, if I can find it real quickly, they cite to, they cite to... Yeah, but you're not showing me where they've addressed these other motivations other than the whole-body imaging, where they address the increased resolution or shadowing, which don't depend on the rear cameras. Well, the shadowing, Your Honor, the shadowing, Your Honor, is impacted by the cameras that would be located in front of the patient. Where do they address these other motivations? That's the problem. Well... But they cite it to some part of the declaration. In the opinion, it's not exactly addressing the argument. Well, they indicate that they have fully considered and agreed with Dr. Vandermeer's testimony on this subject matter, which... Where do they say that? Okay, they say that in a couple of places. They say it in... Bear with me one moment. I say it on page 16 at the bottom. We agree with and credit Dr. Vandermeer. Yes, yes. And they cite to paragraphs 55 through 58 of Dr. Vandermeer's declaration. And I'm trying to... Not that they agree with him on these other points. Well, if we look at Dr. Vandermeer, Your Honor, paragraph 55 through 58... Bear with me one second, Your Honor. So, they talk on page 15 about the... They acknowledge on page 15 that the petitioner sets forth several rationales, okay? At the top of page 15, the first paragraph, they say the petitioner sets forth... This is in the first full paragraph, the last sentence. They say the petitioner sets forth several rationales for why a person would have had reason to combine the teachings of Boyd and Hurley. But these rationales are general in pages they're talking about. They're talking about the rationales, Your Honor, on the appendix at page 1059 that you're referring to. Well, you know, those rationales are broadly stated, but it seems to me that part of the problem, which underlies a good deal of the concern, is the breadth of... The claims don't have the limitations that we're discussing. Well, Your Honor, if I may, the claims... The claims do require... First of all, the claims do require that if we look, for example, at claim one, column 22, line 23, the claims... Which starts at line 17 of column 22, where they say each of said imaging devices generates an image of the illuminated person or portion thereof. And then they go on to say in the last three lines, allowing precise measurement of imaged features of the person or portion thereof located at the specified imaging position. And so we submit, Your Honor, with respect to the reasonable expectation of success inquiry as opposed to the motivation to combine inquiry, that the person of ordinary skill, and there was evidence to this effect by Dr. Vander Weide, that if you add any cameras over and above Voight's single camera, the image of that camera is either going to be partially or fully occluded. It'll be partially occluded if it's located to the side of the main camera because the laterally horizontally scalable sliders are going to partially occlude that image, and it'll be fully occluded if it's located behind. And also, there would be shadowing. Your problem with the claim is that it only requires imaging a portion of the body, not the whole body. Yeah, but let's first talk about the motivation to combine, Your Honor. And this is what the person of ordinary skill be motivated to add an additional camera to the side of the camera in Voight if the image from that camera is going to be at least partially occluded and subject to shadowing. The board found that a person of ordinary skill would not have been motivated to make that combination. Okay, and that's very clear in paragraphs 55 through 58 of Dr. Vander Weide's declaration. And the evidence shows that the person of ordinary skill would not have been motivated to add any cameras over and above the one camera of Voight because if you were to add any such cameras as shown in Hurley, you would have at least partial occlusion and shadowing. Does that occlusion and shadowing occur in both instances where you're taking a view of the entire person versus just a portion of the person? Well, Your Honor, if you were to, for example, add only cameras in the front and not the back, what we're talking about here is adding cameras to the side of the single camera in Voight. If you were to add a camera to the side of the single camera in Voight and you only had, let's say, two cameras, one to the side and one dead on as in Voight, well, the camera to the side is going to be the image from that camera is going to be partially occluded by the horizontally scalable sliders on the side of the patient. Can't you move those sliders? No, you absolutely cannot, Your Honor. And if we look at Voight, which is at 573, well, partially, Your Honor, that's part of the point, by the way, and that's the difficulty the board had. Canfield never explained how you would deal with the problem of Voight in this position framework and the either partial or full occlusion or shadowing that it would create. And so that's why the board said, hey, Canfield hasn't identified what modifications, if any, you're going to make to Voight. That was necessary for Canfield to do in order to first establish there would be a motivation to combine because the person of ordinary skill would not be motivated to combine if adding that extra camera is going to, if that camera is going to be partially occluded or is going to be subject to shadowing. And Voight, on the other hand, Your Honor, Voight very clearly establishes the criticality of that position framework and how important it is to maintaining what's called registration reproducibility because what they do here in Voight is they take an image of the person at one point in time, the person then comes back, they image the person again, and then they need to compare the images at those two points in time and assess whether there's any differences in the lesions that have been imaged. And so they need to maintain, and Voight is very clear about this, registration reproducibility. The way they do that is by virtue of the position framework, a significant part of which is the lateral sliders, which as you can see, Your Honor, if you go to figure two on page 574 of Voight, you can see that those sliders have to appear in the image. If they don't appear in the image, you cannot get registration reproducibility. Okay? So you can't just move those out of the way according to Voight. You can't just get rid of them. By the way, Canfield never proposed any modification to those sliders. But according to Voight, you can't get rid of those because if we look at figure two of Voight and we look at his associated description, those sliders, they have to be imaged in accordance with his teachings so that when the patient comes back in, you've got a fixed reference point in the second image. And that fixed reference point is the slider, and that's necessary to correlate one image to the next and measure very precise differences in the images from one period of time to the next. So, Your Honor, I know the bell went off. Maybe so, but you can still image a portion of the body with the sliders in place, correct? You can image a portion of the body with the sliders in place, Your Honor. That is correct. And I would submit, though, that there is substantial evidence that shows that if you were to add a camera to do that, that camera would be at least, the image would be at least partially occluded, the image would be subject to shadowing, and, therefore, the person of ordinary skill would not have been motivated to make that combination. So you're saying that any combination with more than one camera is included in the claims? I'm not suggesting that, Your Honor, no. No. And if I did, forgive me. And so I may have spoken too loosely, but what I was suggesting, Your Honor, is that the evidence does show that if you add cameras in addition to the single camera of Voight, so if you were to add only the front four cameras of Hurley to Voight, there would be no motivation to do that because the images of those cameras would be partially occluded by the horizontally scalable sliders, and they would be subject to shadowing by those sliders. And so Dr. Vandery testified that the person of ordinary skill would not have been motivated to make that combination because of that problem. And Canfield never dealt with that issue, never described in their petition or anywhere how to modify Voight in order to create a motivation to combine, in order to prove a motivation to combine. Okay. Any more questions from the panel for Mr. Garitano? Okay. I think we have the positions. Thank you. Mr. Dustin, you have some rebuttal time. When you're ready, Mr. Dustin. Thank you, Your Honor. I wonder if the clerk could let me know how much time I have remaining. Well, we have three minutes reserved. Let's see how that goes. All right. Very good, Your Honor. So, first of all, I want to address counsel's argument about what the basis of the board's decision was in this instance. I think it's pretty clear that the board did not find on the basis of motivation to combine. It found on the basis of lack of reasonable expectation of success. That's fairly apparent from the appendix at 31 where the board says specifically, we find petitioner has failed to establish by a preponderance of the evidence that a person of ordinary skill in the art would reasonably have expected to be successful in combining unmodified Voight with Hurley's arrangement. Even in the portion that counsel cited for this notion that the board's decision was on the basis of motivation to combine, that is that latter part of that same paragraph, which it makes reference to Dr. Vander Weide's deposition or declaration, rather. It says, we agree and credit the detailed testimony that an artesian would not reasonably have expected such a combination to be successful. There's frankly no statement in the board's decision that the basis of the decision was motivation to combine. Let's address what counsel says is the reason that would prevent this motivation from arising. That is that these sliders in his view would partially occlude the view of additional cameras that were placed in front of the subject. We didn't argue that one needed to perfect Voight in that particular regard. We did not assert that one needed to eliminate or dispense with Voight's sliders. We offered a configuration that would improve upon the imaging that Voight already sought to achieve, which is the imaging of the front of the body by placing multiple cameras vertically spaced and then horizontally displacing them in an oblique angle. One was able then to image more effectively the curved surfaces of the front of the body that Voight already sought to image. Also, that arrangement would have the advantage of increasing the area that could be imaged at one time because Voight shows imaging capable from its movable camera of only the torso of the individual, whereas vertically spacing cameras would allow you to image basically from head to toe at the same time. This existence of the sliders would not have prevented a person from improving the Voight system with the teachings that both Hurley and Crampton describe. Therefore, even if this court were to view the board's decision as having instead been premised upon a motivation to combine, that motivation exists and the board has not dealt with all of these various rationales in its opinion to explain how the sliders would have prevented the achievement of those things. I wanted to also mention briefly the wall issue because a lot of this depends on the existence of a wall and the board cited really to no evidence that a wall existed in Voight. Really, the only statement it makes is in pointing to figure one, it says a wall is disclosed in figure one and grooves in that wall are disclosed that hold the sliders. Now, in looking at figure one, and I think let me find a statement, the best image and unfortunately the repeated Xeroxing of this sometimes leaves this a little bit unclear, but the Voight reference itself at appendix 573. The Voight reference itself shows the sliders as attached to horizontally disposed what appear to be wires in my reading of this diagram that stretch from this solid upright of the frame, this 90 degree framework, that stretch from one side of the frame to the other to hold the sliders. I don't see a groove here. I don't see any wall here. Voight makes no mention of a wall. Melanoscan at oral argument itself conceded that Voight does not mention even the need for a wall and the arguments that they make, that Melanoscan makes on appeal about grooves and lines and lead lines and the like were never presented to the board and the board makes no reference to any of that as support or evidence in support of its determination of a wall. This is, I think, a textbook example of the board kind of going beyond their brief a bit here and imagining structures that are not disclosed in the primary reference. Let me also say one other thing about sliders. There's been a lot of talk about the sliders that would occlude portions of the individual. I don't think that Voight makes any reference to the criticality of the size or dimensions of sliders. The Smith-Nephew decision, which we cited in our brief, Your Honor, makes clear that while a structure might be referred to in a prior art reference, arguments that are intended to suggest that that has to have particular dimensions or sizes that would be sufficient to obscure large portions of the individual, those are not supported by the reference itself. There's no criticality given to the shape or size of these sliders. The only thing that the sliders need to accomplish is, as counsel pointed out, is they need to provide some sort of reference point that would be visible in the image that is taken. And in this particular instance, sliders of really any dimension, even a minimal dimension that would obscure roughly a small portion, maybe even a bar or something that might have a one-inch diameter in contact with the individual to help position them, would very clearly have little or no effect on obscuring any sizable portion of the individual. And so I think the argument about the sliders for that reason alone is unpersuasive, Your Honor. I may have heard the bell, but I think unless the Court has some additional questions, which I'm happy to answer. And I know we haven't spent much time on the wall issue, but as I said, we also touched briefly on the APA issue that we raised, which had to do with the sudden reversal by the Court of considering modifications that were proposed in the petition and then determining in the absence of any objection from the petitioner or any argument to exclude, determining on the basis of trial that it was going to ignore that evidence. And based on the decision to ignore that evidence, it was then going to find that the sliders could not have been retained without this phantom wall. I'm happy to answer questions on that aspect of our briefing as well, Your Honor. Let me ask, does the panel have any further questions for Mr. Destin? No, I don't. No. Okay. Hearing none, I believe we have the arguments of both sides of the cases submitted. And that concludes this panel's arguments for this morning. We will terminate the call. Thank you, Your Honors. Thank you, Your Honors. The Honorable Court is adjourned until tomorrow morning at 10 a.m.